OPINION OF THE COURT
Carolyn E. Demarest, J.
A bench trial in this action seeking damages under alternative theories of breach of contract, negligence, indemnification, restitution, a “wrongfully filed mechanic’s lien” and counterclaims of breach of contract, conversion, and unjust enrichment was commenced on July 30, 2012 and concluded on September 20, 2012. This action was joined for trial with the related action, IVM Gen. Constr. v Neptune Estates, LLC (Sup Ct, Kings County, index No. 19311/10), in which IVM sought to foreclose a mechanic’s lien at issue in both matters.
At the conclusion of the joint trial, this court ruled from the bench that the mechanic’s lien was void as it was filed untimely pursuant to the New York Lien Law. As a result, Neptune’s counterclaim for wilful exaggeration in that action could not be adjudicated and the IVM action was dismissed.
In the present action, the first and second causes of action for breach of contract and negligence, respectively, were withdrawn. At the conclusion of the bench trial, the third, fourth, and fifth causes of action for indemnification and restitution were dismissed as was the seventh cause of action for a “wrongfully filed mechanic’s lien” as to defendant Pavel Lutso (Lutso) only. Defendants Big Poll & Son Construction, LLC (Big Poll) and Lutso’s second counterclaim for conversion was similarly dismissed.
The court reserved decision on the sixth and seventh causes of action for a “wrongfully filed mechanic’s lien” as well as Big Poll’s first and third counterclaims for breach of contract and unjust enrichment, respectively.
Background
This action involves a dispute between plaintiff Neptune Estates, LLC (Neptune), owner of 380 Neptune Avenue, *652 Brooklyn, NY (property),[1] and defendant Big Poll, Lutso, the principal of Big Poll, defendant IVM General Construction Inc. (IVM) and its principal Vadim Gorshkov (Gorshkov). The allegations of the dispute are discussed in IVM Gen. Constr. v Neptune Estates, LLC (29 Misc 3d 1238[A], 2010 NY Slip Op 52188[U] [Sup Ct, Kings County 2010]).[2]
On August 21, 2008, Neptune entered an agreement with defendant Big Poll whereby Big Poll would act as the general contractor on a construction project on the property. By contracts dated February 2009, IVM entered two subcontractor agreements with Big Poll whereby IVM agreed to perform the structural steel work, masonry, and concrete slabs on the project.[3] In the complaint, Neptune alleged that on or about February 22, 2009, Neptune removed Big Poll for cause and hired nonparty Future City Plus, Inc. (Future City) to act as the new general contractor on the project. Although a construction contract between Neptune and Future City was not executed until April 4, 2009, on March 15, 2009, IVM entered two subcontractor agreements with Future City whereby IVM was to be paid $181,000 and $191,000, respectively, for the structural steel and masonry and concrete slabs on the project. Neptune alleges that Future City subsequently terminated these subcontracts with IVM for cause on December 15, 2009. The project remained incomplete at the time of trial.
On January 5, 2010, IVM filed a mechanic’s lien (January Lien) against the property and, pursuant to Lien Law § 9 (3), IVM improperly identified the person with whom the contract was made as both “Big Poll & Son Construction, LLC and Future City Plus, Inc.” On March 10, 2010, after Neptune moved to discharge the January Lien, Justice Bunyan vacated the January Lien without prejudice in a short form order with the consent of the parties. The order indicated that “a new *653 Mechanic’s Lien may be filed in a timely manner. This is without costs to any party.” On April 1, 2010, IVM filed a second mechanic’s lien (Lien)[4] identifying the person with whom the contract was made as Big Poll & Son Construction, LLC, noting, “There may be a claim against the successor on the project, Future City Plus, Inc., if this company agreed to assume the obligation of its predecessor.” This is the only substantive change from the January Lien other than the identity of IVM’s attorney and the signature on the Lien.
At the conclusion of the joint trial, Neptune moved to vacate the Lien and dismiss the lien foreclosure action based upon IVM’s failure to establish substantial performance of the steel or concrete masonry contracts and upon Lien Law § 10 (1) for failure to file the Lien within eight months after the final performance of work. The court held that, based on the testimony and evidence introduced at trial, Big Poll was off the construction site no later than April 21, 2009. Accordingly, the filing of the Lien in January of 2010[5] occurred more than eight months after IVM stopped performing work for Big Poll. The court vacated the Lien pursuant to Lien Law § 10 (1) and dismissed IVM’s foreclosure action. As a result of the vacatur of the Lien, the court also dismissed Neptune’s counterclaim for wilful exaggeration pursuant to Atlas Refrigeration-Air Conditioning, Inc. v Lo Pinto (33 AD3d 639 [2d Dept 2006]), as a claim for wilful exaggeration is precluded if a lien is found to be invalid based upon any reason other than the wilful exaggeration. Accordingly, the IVM action was dismissed in its entirety.
With respect to the Neptune action, this court dismissed Neptune’s fourth and fifth causes of action for restitution of allegedly diverted trust assets holding that Neptune was not a beneficiary pursuant to Lien Law article 3-A and no proof of any actual diversion of assets by Big Poll, Gorshkov, or IVM was presented at trial. The court dismissed Neptune’s seventh cause of action for wrongful filing of a mechanic’s lien as to Lutso as it was established that Gorshkov, on behalf of IVM, had filed the Lien, not Lutso. The court also dismissed Big Poll’s second counterclaim for conversion holding that if Big Poll were entitled to recover against Neptune at all, as a matter of law, *654 any recovery by Big Poll could only be based upon breach of contract and there was no evidentiary basis for a claim of conversion against Neptune.
At the conclusion of the trial, counsel were given the opportunity to submit posttrial briefs. The court specifically noted that the briefs should include a dollar amount with respect to each of the parties’ respective claims. During oral arguments, the court noted that the signed release by Lutso on behalf of Big Poll (exhibit 12), acknowledging payment in full by Neptune, appeared to preclude recovery by Big Poll upon its breach of contract counterclaim and the existence of the contract would preclude recovery upon the equitable unjust enrichment claim. However, the court permitted Big Poll the opportunity to brief these issues. Plaintiff submitted a posttrial memorandum seeking $328,278 in damages. IVM submitted a posttrial reply letter arguing that the “counterclaims must fail.”[6] Plaintiff submitted a reply to IVM’s posttrial reply letter. Big Poll did not make any posttrial submissions and is deemed to have abandoned its counterclaims.
Discussion
Big Poll’s Claims
Plaintiff argues that Big Poll’s counterclaims for breach of contract and unjust enrichment must be dismissed as Big Poll was paid for its work through its last payment application, number four, which was signed by Lutso on March 28, 2009 (exhibit 8).[7] Payment application number four indicates that the total value of the work completed was $2,205,100 and that $368,010 was owed. This corresponds to the February 27, 2009 lien waiver signed by Lutso indicating an amount due of $368,010 (exhibit 8). Neptune’s bank statement from Brooklyn Federal Savings Bank indicates that on April 1, 2009, four days after Lutso signed payment application number four, Neptune received a credit in its account for $394,135 (exhibit 4). On *655 April 2, 2009, Neptune then wired $368,000 to Big Poll[8] (exhibit 4). The “Final Release: Final Waiver of Claims and Liens and Release of Rights” (Final Release), signed by Lutso on April 23, 2009, indicates $0 balance due and the amount previously paid as $2,205,100 (exhibit 12).
At the conclusion of the trial, Big Poll claimed that the evidence at trial established that Big Poll was only paid approximately $1,500,000[9] by Neptune, thus leaving an approximate balance of $700,000.[10] At oral argument, and in its posttrial brief, plaintiff explained that the $700,000 discrepancy is due to the $625,000 paid to Future City by Neptune for the demolition, excavation and foundation work performed prior to August 21, 2008,[11] that was included in payment application one, and $79,260 in retainage. Although payment application one was not introduced into evidence, proof of payments of $625,000 by plaintiff to Future City, between March 1, 2006 and December 19, 2007, was introduced into evidence (exhibit 4). Neither Big Poll nor IVM have contested this explanation or submitted its own calculations of damages.
Big Poll’s first and third counterclaims are dismissed as Big Poll failed to meet its burden to prove its damages for breach of contract and unjust enrichment. The Final Release, signed by Big Poll’s principal, clearly states a balance due of $0 and Big Poll has not demonstrated that it was owed the claimed approximately $700,000 (exhibit 12). Big Poll did not contest Neptune’s calculations in a posttrial brief as directed by the court. At the conclusion of the trial, Big Poll argued that it anticipated receiving the proceeds from payment application number five, signed and submitted by its successor, Future City, months after Big Poll signed the Final Release and months af *656 ter it was off the site, but this claim was completely unsupported by evidence or credible testimony and is rejected. Accordingly, Big Poll’s first and third counterclaims are dismissed.
Neptune’s Claims
Plaintiff contends that its sixth and seventh causes of action seeking damages for “wrongfully filed mechanic’s liens” are based upon the common-law tort cause of action for “injury to property.” Neptune alleged that IVM and Gorshkov filed the Lien with “a material misstatement or false claim,” with the intent “to cloud title in order to exact from Neptune money that IVM was not entitled to,” and the “wrongfully filed mechanic’s liens caused Neptune to lose the use of the Neptune property with resulting delay to the completion of the Project thereby lessening the value of the Neptune Property.” The alleged tortious conduct allegedly resulted in “damages including increased interest payments in an amount to be determined at trial but presently estimated to be not less than $250,000.” At trial Neptune established that the filing of the Lien resulted in a work stoppage from January 5, 2010, when the lender, Brooklyn Federal Savings Bank, ceased releasing funds as a result of IVM filing the Lien, and continued until June 7, 2010, when the Lien was bonded and Brooklyn Federal Savings Bank resumed releasing funds to Neptune. Neptune calculates damages of $125,010 in interest it paid on a $500,000 loan necessary to secure the Lien, $199,633 for the interest on the mortgage between January 5, 2010 and June 7, 2010, and $3,635.40 for flood insurance on the property between January 5, 2010 and June 7, 2010. Accordingly, plaintiff seeks $328,278 in damages as calculated through December 7, 2012.
In support of its legal theory, Neptune cites the definition of “injury to property” in General Construction Law § 25-b as “an actionable act, whereby the estate of another is lessened, other than a personal injury, or the breach of a contract.” Neptune also cites to Ghiglione v Friedman (115 App Div 606 [2d Dept 1906]) and Buckley v Mayor (30 App Div 463 [1st Dept 1898]) in support of its common-law claim for injury to property. In Ghiglione, plaintiff
“alleg[ed] in effect that the defendant wrongfully, unlawfully and knowingly caused a notice of mechanic’s lien against plaintiffs property to be filed in the clerk’s office of New York county upon a fictitious claim, thereby delaying the work on a building in process of construction, resulting in the loss of a *657 month’s rental of the property” (Ghiglione, 115 App Div at 607).
In citing the definition of “injury to property” then found in section 3343 (10) of the Code of Civil Procedure,[12] the Court held that the plaintiff had sufficiently alleged a cause of action for injury to property and noted, “it is not necessary to denominate the cause of action by any particular name other than as an action on the case for wrongful injury to property” (Ghiglione, 115 App Div at 607).
IVM argues that Neptune’s sixth and seventh causes of action are actually for “slander of title” and that Neptune failed to allege the requisite malice and special damages in its pleadings. Further, IVM claims that Big Poll acknowledged that it owes IVM the full amount of the Lien[13] and this is both proof that the Lien was not frivolous and that it was not filed with malice. IVM argues that the Ghiglione and Buckley precedents are inapplicable in this action as they interpreted the Code of Civil Procedure, which was repealed, and plaintiff cannot recover under a theory of “injury to property.” IVM further argues that as plaintiff did not provide a promissory note to the individual that loaned Neptune the money to secure the Lien, or provide receipts for the purported cash interest payments, Neptune has not established its damages.
FVM’s argument that the sixth and seventh causes of action are actually claims for slander of title is unavailing as plaintiff has never asserted that it seeks to recover based upon slander of title and a mechanic’s lien does not cast doubt on the validity *658 of an owner’s title, which is a necessary element for slander of title (see Masaryk Tower Corp. v Anastasi, 2005 NY Slip Op 30425[U] [Sup Ct, NY County 2005], citing Fink v Shawangunk Conservancy, Inc., 15 AD3d 754, 756 [3d Dept 2005]; Hirschhorn v Town of Harrison, 210 AD2d 587, 588 [3d Dept 1994]).[14] IVM’s reliance upon the Court of Appeals decision in Rosenbaum v City of New York (8 NY3d 1 [2006]) and similar cases that describe the elements necessary to allege slander of title is misplaced as plaintiff has not argued that it intended to plead a cause of action for slander of title. In its slander of title cause of action in Rosenbaum, consistent with the theory of slander of title that the alleged tortious acts adversely affected title, the plaintiff alleged that the improper filing of a City Housing Preservation and Development lien had resulted in the loss of a potential sale of the property (Rosenbaum, 8 NY3d at 12). In the present action, plaintiff has never contended that the Lien prevented plaintiff from transferring title to the property. Further, it is noted that in Rosenbaum, the Court of Appeals ultimately dismissed the slander of title cause of action based upon the failure of plaintiff to give notice in compliance with the General Municipal Law and did not address the merits of the slander of title claim (Rosenbaum, 8 NY3d at 12-13). Rosenbaum does not impeach plaintiffs reliance upon the tort claim of injury to property. Plaintiff has properly alleged an injury to property cause of action (see Ghiglione, 115 App Div at 607).
IVM argues that the common-law cause of action for injury to property is no longer viable, claiming, erroneously that there does not appear to be a single case published in the past 100 years holding that the filing of a false mechanic’s lien constitutes injury to property (see Lippes v Atlantic Bank of N.Y., 69 AD2d 127, 140-141 [1979]). As discussed herein, there is no merit, or authority to support, IVM’s contention that this ancient common-law cause of action is extinct. Further, IVM’s suggestion that slander of title is the only “applicable doctrine” *659 in this action is unavailing. In addition to injury to property, a number of common-law remedies are available to a property owner where damages result from the wilful exaggeration of a lien. For example, a lienor that wilfully exaggerated a lien may be liable for: “(1) fraud; (2) disparagement (sometimes called slander of title); (3) interference with contract (to extent such lien interferes with existing contracts); (4) interference with prospective business advantage (to extent such lien interferes with potential deals); (5) extortion; (6) malicious prosecution; and (7) malicious abuse of process” (Boyd et al., Practice Insights, Willful Exaggeration of Mechanics’ Liens, NY CLS, Book 20B, Lien Law § 39 at 336-337). In addition to the common-law remedies, although not ultimately available to plaintiff in this action, Lien Law § 39-a provides for special damages where it is determined that a lien was wilfully exaggerated.[15] Accordingly, this court finds that recovery for damages resulting from the wilful exaggeration of a lien is available through various common-law claims, including injury to property, and is not exclusive to Lien Law § 39-a or, as is argued by IVM, a claim for slander of title.
“An action based upon an alleged injury to property is one sounding in tort. Accordingly, any manner of commercial torts have been found to be within the purview of ‘injury to property’ ” (Lippes, 69 AD2d at 140 [citations omitted]). In its discussion of injury to property in Lippes, the First Department appellate court specifically cited Ghiglione in explaining that “improperly filing a mechanic’s lien upon a fictitious claim resulting in delaying building work” was an “injury to property” (Lippes, 69 AD2d at 140-141). Upon a finding that Neptune incurred losses as a result of FVM’s wrongfully, unlawfully and knowingly filing a mechanic’s lien against the property, based upon a fictitious claim, Neptune is entitled to recover damages *660 for injury to property (see Ghiglione, 115 App Div at 607; Lippes, 69 AD2d at 140-141).
Upon the evidence adduced at trial, this court found that Big Poll was not running the project as general contractor, but that Gorshkov and IVM, who had brought Big Poll into the job, were actually managing it and acting as the general contractor. There was significant evidence that IVM and Gorshkov controlled Big Poll’s bank account, disbursed funds to itself as well as other subcontractors, and Big Poll was rarely on the site. Big Poll was brought into the project because, unlike IVM and Gorshkov, who had initially been approached by plaintiff, it was licensed to act as general contractor. In dismissing Big Poll’s claims, the court gave full credit to the waivers signed by Big Poll, including the Final Release in which Lutso, on behalf of Big Poll, signed a document clearly labeled, “FINAL RELEASE: FINAL WAIVER OF CLAIMS AND LIENS AND RELEASE OF RIGHTS” which expressly stated that Big Poll “waive[d] and release [d] [Neptune] from any and all claims and liens and rights of liens upon the [property]” (exhibit 12). Since it was Gorshkov who was controlling all aspects of the construction and was managing Big Poll’s finances as related to this project through a dedicated bank account, Gorshkov necessarily knew that IVM had no legitimate lien claim against Big Poll at the time the Lien was filed. Accordingly, this court finds that IVM wrongfully, unlawfully and knowingly filed the mechanic’s lien against the property based upon a fictitious claim.
In its summary judgment decision in the IVM action in 2010, this court noted that there were a number of issues of fact that prevented the court from summarily dismissing FVM’s complaint at that time, including the date of the Final Release signed by Big Poll, the date Big Poll was removed from the project, and whether Big Poll was owed funds from Neptune when the Lien was filed (IVM, 29 Misc 3d 1238[A], 2010 NY Slip Op 52188[U]). At trial, it was established that Lutso signed the Final Release on April 23, 2009 (exhibit 12) and that Big Poll was no longer on the site at least as of April 21, 2009. Further, IVM failed to establish that Big Poll was owed any funds from Neptune at the time the Lien was filed. In its summary judgment decision, this court specifically relied upon an affidavit submitted by IVM from Lutso, dated May 4, 2010, in which Lutso stated that Big Poll was not paid in full and was told that if it “did not sign the [Final Waiver], the project could not continue.” However, at trial, neither IVM nor Big Poll introduced any credible evidence *661 that these were truthful statements. As IVM was actually managing the project when Big Poll was removed, and continued to work on the project after Future City took over as general contractor, Gorshkov and IVM were also clearly aware that Big Poll was off the job in April of 2009. Thus, IVM’s identification of December 15, 2009 as the last date on which it performed work for Big Poll on the project was a misrepresentation since Big Poll had been off the site for almost eight months at that time. Similarly, while a subcontractor often may not have a clear understanding as to whether a general contractor is owed money at the time of filing a mechanic’s lien, as IVM had complete access to Big Poll’s finances, IVM was clearly aware of Neptune’s payments to Big Poll.
The court notes that IVM did not include Future City as a defendant or even reference the Future City contract in the IVM action complaint despite referencing Future City in both the January Lien and the Lien.[16] Both liens list the date when IVM purportedly last completed work for Big Poll as December 15, 2009 (exhibits 70, 71). This is the same date that IVM was terminated by Future City (exhibit 24).[17] This is proof that IVM improperly filed liens against Big Poll that included work completed under its contract with Future City or, at the very least, used this fictitious December date so as to make the lien timely pursuant to the Lien Law.[18] IVM did not make any attempt to distinguish between the work performed for the two separate contractors by filing separate liens or by bringing an action against Future City. The evidence is clear that IVM made false representations that the Lien was for work completed solely under Big Poll’s contract with IVM and filed fictitious liens against plaintiffs property by intentionally incorporating inflated claims and false work completion dates.
In support of its argument to dismiss Neptune’s causes of action, IVM contends that “two courts have sustained the validity *662 of the lien.” This is a clear mischaracterization of the prior rulings regarding the liens. Justice Bunyan permitted IVM to refile the January Lien upon a motion to vacate it with the consent of the attorneys in the action. This court, in addressing a motion to vacate the Lien that IVM subsequently filed as a result of Justice Bunyan’s order, identified a number of potential issues that could invalidate the Lien, declined to vacate the Lien due to issues of fact, and required IVM to file an undertaking of $100,000 as a condition of continuing the Lien (see IVM Gen. Constr. v Neptune Estates, LLC, 29 Misc 3d 1238[A], 2010 NY Slip Op 52188[U], *4 n 6 [2010]). These rulings hardly constitute “validation” of the liens or imply that, upon the completion of discovery and a trial, this court could not find that they were fictitious.
Neptune argues that it incurred three separate elements of damage as a result of the injury to its property. Neptune argues that during the work stoppage from January to June of 2010, that resulted from Brooklyn Federal Savings Bank ceasing distribution of funds until the Lien was secured, Neptune paid for six months of flood insurance and six months of interest on its mortgage. Neptune calculates that the flood insurance totaled $3,635.40 (exhibits 47, 48) and the mortgage interest totaled $199,633.39 (exhibit 49). Neptune also alleges that to secure the Lien, it took a loan from Benny Barmapov (Barmapov) who is the brother-in-law of Leon Szusterman (Szusterman), a part owner of Neptune. Neptune claims, and Barmapov and Szusterman testified, that Barmapov loaned Neptune the money at an interest rate of 10% per annum, payable in cash on a monthly basis. Neptune and Barmapov did not record the terms of the loan in writing signed by Neptune, the party to be charged, nor did Barmapov issue receipts for the purported cash payments. Other than oral testimony, Neptune offered little proof as to its purported interest payments. IVM argues that plaintiff cannot recover damages for the interest on the loan taken to secure the Lien as there was no promissory note and no receipts from the purported lender for the cash interest payments.[19]
*663 The proof establishes that construction on the project was stalled as a direct result of the filing of the January Lien and could not be resumed until the Lien was secured on June 7, 2010. Neptune’s bank account statements establish that the last funds were released by Brooklyn Federal Savings Bank prior to the January Lien on December 16, 2009 and Neptune’s bank account listed a balance of $694.62 as of January 6, 2010 (exhibit 47). The next significant deposit into Neptune’s account did not occur until June 8, 2010, which corresponds to two checks issued by Barmapov’s company, Irma Taxi Corp., posted on June 8, 2010 and made out to Title Issues, to secure the Lien (exhibits 41, 47).
Neptune contends that it is entitled to the $3,635.40 it paid for flood insurance between January 14, 2010 and June 11, 2010 (exhibits 47, 48).[20] Such costs are a proper element of damages for the injury inflicted upon plaintiffs property during this time period, while the project was stalled as a result of the wrongful filing of the lien. Accordingly, plaintiff is entitled to recover the $3,635.40.
Neptune further argues that it is entitled to $199,633.39 in mortgage interest payments between January 5, 2010 and June 7, 2010 (exhibit 49) .[21] Neptune reached its calculation in its posttrial brief by taking the interest it paid in 2010, $399,266.78 and dividing that amount by two for, “6 Months 2010 . . . January 5, 2010 - June 7, 2010.” The court agrees that Neptune is entitled to the interest payments it incurred while the project was stalled as a result of the wrongful filing of the lien. However, upon review of the mortgage interest payments included in the general ledger and the form 1098, the court finds Neptune’s calculation to be incorrect. It is noted, that the time period between January 5 and June 7 is five months, not six. Further, averaging the amount of interest by month is an inaccurate method of establishing damages as Neptune’s actual interest *664 payments are included in the ledger for January through May of 2010 and they total $146,401.01 (exhibit 49). Accordingly plaintiff is entitled to recovery of $146,401.01 for mortgage interest.
Neptune also asserts that it is entitled to a judgment for the interest it claims to have owed Barmapov to the date the Lien was vacated, calculated as $125,010 as of December 7, 2012. Although plaintiff would be entitled to interest paid upon a loan taken in order to secure the Lien so as to continue work on the project, plaintiff has failed to adduce sufficient evidence of payments made. The checks issued by Irma Taxi Corp. demonstrate that Szusterman’s brother-in-law, Barmapov, made a $500,000 payment from his business to secure the Lien (exhibit 41). However, it is undisputed that no note or other writing signed by plaintiff, memorializing the terms of the loan, was created. Although Barmapov prepared a self-serving letter indicating a 10% interest rate on the purported loan, beginning in June of 2010, it is dated February 8, 2011, eight months after the Lien was secured and is not signed by plaintiff (exhibit 42). Even were this self-serving memorandum sufficient to establish that a 10% interest rate had been agreed upon, Barmapov did not issue receipts for the many purported cash interest payments made by plaintiff, nor is there a tax record of such payments or the receipt of such income by the recipient. The only evidence that plaintiff submitted as proof of its interest payments, other than oral testimony, is a handwritten “ledger” created by Szusterman showing three interest payments beginning in December of 2010 totaling $12,501 (exhibit 44), Neptune’s bank statements showing six cash withdrawals of between $4,166 and $6,917[22] between July of 2010 and May of 2011 (exhibit 47), one check for $29,802 issued by Neptune to Mustang Petroleum, a company owned by Neptune’s principal Szusterman, dated March 1, 2012 (exhibit 45), and a “general ledger” from Neptune indicating the purported interest payments to Barmapov (exhibit 46).
The documents admitted into evidence are insufficient to establish that Barmapov was the recipient of cash payments as a *665 result of a loan agreement. The handwritten ledger by Szusterman (exhibit 44) was created for this litigation, was not made contemporaneously with the purported payments, and is not a business record. Accordingly it has no evidentiary value. Similarly, the “general ledger,” intended to demonstrate Neptune’s interest payments to Barmapov (exhibit 46), was created by an accountant, who did not testify at trial, for the purposes of this trial and is of no value. The business records from which such list might have been derived, were not provided at trial. The check issued by plaintiff to Szusterman’s own company for $29,802 (exhibit 45) does not substantiate the claim that Szusterman used those funds to pay Barmapov in cash; it only establishes that Szusterman received funds from Neptune. Nor did plaintiff produce records establishing that Barmapov or his taxi company received or deposited any of the purported interest payments. This court finds the contention that Barmapov received more than $65,000 in cash interest payments on a loan, without a single written record establishing the receipt of those funds, to be insufficiently proved. Further, there was no documentary proof establishing that Barmapov mortgaged his company’s taxi medallion in order to make the $500,000 loan to plaintiff, as was claimed at trial. Moreover, even were the court to accept the plaintiffs claims as to payments to Barmapov, despite arguing that Neptune is entitled to damages of over $125,000 for interest owed to Barmapov, Neptune’s posttrial brief indicates that it only paid Barmapov $67,304 in interest as of December of 2012. Plaintiff may not recover for losses it has not sustained. Accordingly, plaintiff has failed to meet its burden to establish damages for interest paid on the purported loan.
Plaintiff is awarded judgment against IVM for $150,036.41 for the cost of flood insurance and mortgage interest incurred during the period defendants’ fraudulent lien delayed construction, with interest from May 1, 2010.
Plaintiff is also entitled to recover against Gorshkov in his individual capacity under the seventh cause of action for a wrongfully filed mechanic’s lien. Plaintiff argues that Gorshkov is individually liable to Neptune as he was an officer of IVM and participated in the tortious act of wrongfully filing the lien on behalf of IVM. “A corporate officer may be liable for torts committed by or for the benefit of the corporation if the officer participated in their commission” (PDK Labs, Inc. v G.M.G. Trans W. Corp., 101 AD3d 970, 973 [2d Dept 2012], citing Hamlet at Willow Cr. Dev. Co., LLC v Northeast Land Dev. Corp., 64 *666 AD3d 85, 116 [2d Dept 2009]; see Aguirre v Paul, 54 AD3d 302, 304 [2d Dept 2008]; Greenway Plaza Off. Park-1 v Metro Constr. Servs., 4 AD3d 328, 329-330 [2004]). However, “[a] corporate officer is not held liable for the negligence of the corporation merely because of his official relationship to it. It must be shown that the officer was a participant in the wrongful conduct” (Aguirre, 54 AD3d at 304, citing Clark v Pine Hill Homes, 112 AD2d 755 [4th Dept 1985]). “ ‘ [I]f a director or officer commits, or participates in the commission of, a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby’ ” (Aguirre, 54 AD3d at 304, citing Greenway Plaza, 4 AD3d at 329-330). In the posttrial reply letter, Gorshkov argues that he acted in his corporate capacity and “[t]he record contains no evidence to breach the corporate shield.” However, as Gorshkov was an officer of IVM, and was the individual that wrongfully filed the Lien for IVM, he was a participant in the wrongful conduct and is individually liable to Neptune for the damages (see Aguirre, 54 AD3d at 304; PDK Labs, 101 AD3d at 973-974). The evidence at trial was overwhelming that Gorshkov personally orchestrated all aspects of the Lien wrongfully filed against plaintiff’s property. He is therefore answerable in damages for his tortious behavior.
Conclusion
Defendant Big Poll & Son Construction, LLC’s first and third counterclaims are dismissed.
Plaintiff is granted judgment on the sixth and seventh causes of action, jointly and severally, against IVM General Construction, Inc. and Vadim Gorshkov, in the amount of $150,036.41 with interest from May 1, 2010.

. The project at issue was the construction of a seven-story residential condominium building which was expected to include 21 units.

. In the decision, this court denied Neptune’s summary judgment motion to dismiss the complaint, discharge IVM’s mechanic’s lien and cancel the notice of pendency. The court denied the motion as there were issues of fact as to whether Neptune owed funds to Big Poll when the lien was filed and whether IVM’s lien had been timely filed against Big Poll within the statutory eight months following Big Poll’s departure as general contractor.

. Neptune speculates that the subcontractor agreements between IVM and Big Poll dated “February 2009” (exhibit 58) only “came into existence between January 28 and February 22 [2010], when IVM served its Lien Law 38 Statement. . . .”

. This lien is the subject of the present action and the IVM action.

. In this court’s decision denying the summary judgment motion, the Lien filing date was deemed to be that of the January Lien (see IVM Gen. Constr. v Neptune Estates, LLC, 29 Misc 3d 1238[A], 2010 NY Slip Op 52188[U], *4 n 6 [2010]).

. It appears that FVM’s reply letter confuses the parties and which causes of action it is opposing. From the context of the reply letter, IVM opposes Neptune’s sixth and seventh causes of action and takes no position on Big Poll’s counterclaims.

. Payment application number five, was signed on July 3, 2009 by Dmitry Kadishev, principal of Future City, as it became the general contractor on the project after Big Poll was removed (exhibit 9).

. Although the Brooklyn Federal Savings Bank statement does not identify the recipient of the wire transfer, it is uncontested that Big Poll was the recipient.

. Exhibit 4, a summary of payments from Neptune to Big Poll and corresponding checks, demonstrates that Neptune paid Big Poll $1,475,480 for its work. However, there was testimony at trial suggesting that this number was higher. In the posttrial brief, plaintiff contends that Big Poll was paid $1,500,480. Big Poll did not submit any explanation of its calculations as to how much Big Poll was paid despite direction from the court to do so.

. In its answer, Big Poll sought damages “estimated to be not less than $679,570.”

. At trial, it was established that Future City worked on the project prior to Big Poll becoming the general contractor in August 2008. At the insistence of Neptune’s lender, Brooklyn Federal Savings Bank, Big Poll was brought in to replace Future City as the general contractor at that time.

. General Construction Law § 25-b, the identical definition of “injury to property” as contained in section 3343 (10) of the Code of Civil Procedure, was added to the General Construction Law in 1920 (L 1920, ch 917, § 1) which was first enacted in 1909 (L 1909, ch 27). The statutory language dates back to at least the 1848 Code of Procedure (see Lippes v Atlantic Bank of N.Y., 69 AD2d 127, 139 [1st Dept 1979]).

. IVM brought a claim for $536,671.94, the value of the Lien, against Big Poll in the IVM action and raised it in its pretrial memorandum. At the conclusion of the trial, after voiding the Lien, the court dismissed the IVM action without further addressing IVM’s claim against Big Poll. IVM did not move for judgment on its breach of contract cause of action against Big Poll and did not cross-claim against Big Poll in the surviving action. As IVM has not made any application to this court since the conclusion of trial to pursue relief against Big Poll, it is presumed that IVM has either abandoned its claim against Big Poll or the parties have resolved the issue through a settlement between themselves. The evidence at trial was that Big Poll and IVM were joined in interest and that IVM acted as Big Poll’s agent in performing the contract, even to the extent of signing Big Poll’s requisitions for payment and checks in payment to itself and other subcontractors.

. Similarly, this was not a cause of action for injurious falsehood. It is noted that although the courts have grappled with distinguishing causes of action for “slander of title” and “injurious falsehood,” it appears to he settled that the elements of these causes of action are “essentially identical” (see Casa de Meadows Inc. [Cayman Is.] v Zaman, 76 AD3d 917, 922 [1st Dept 2010], citing Rosenbaum v City of New York, 5 AD3d 154, 155 [1st Dept 2004]; Tolisano v Texon, 144 AD2d 267, 272 [1st Dept 1988, Smith, J., dissenting], revd on dissenting mem 75 NY2d 732 [1989]; Masaryk, 2005 NY Slip Op 30425[U]; compare Hirschhorn v Town of Harrison, 210 AD2d 587, 588 [1994]).

. Arguably, the statutory cause of action for wilful exaggeration under Lien Law § 39-a might appear to have been intended to supercede the common-law tort of injury to property, at least with respect to the filing of a false lien. However, to recover for wilful exaggeration under the Lien Law, a party must fully litigate the merits of the lien to a conclusion in a foreclosure action, and the lien must survive as valid in sill other respects, before recovery can be had for damages sustained. Thus, the statute does not provide a vehicle for relief to a wronged property owner, against whom the lien has been improperly filed, unless the lienor chooses to foreclose. While recovery in the nature of a penalty may be appropriately thus limited (see Joe Smith, Inc. v Otis-Charles Corp., 279 App Div 1, 4-5 [4th Dept 1951]), it could not have been the legislative intent to preempt all relief otherwise available to the damaged owner.

. In this court’s summary judgment decision in the IVM action, it was noted that the inclusion of Future City did not invalidate the Lien; however, any foreclosure upon unpaid amounts pursuant to contracts with Future City would require separate liens (see IVM, 29 Misc 3d 1238[A], 2010 NY Slip Op 52188[U]).

. Exhibit 24 is the December 14, 2009 email from Future City to IVM in which Future City removed IVM from the project as of December 15, 2009.

. Neptune raised the issue of listing both Big Poll and Future City in the January Lien in an affirmation, dated February 8, 2010, in what appears to be Neptune’s first attempt to invalidate the January Lien in Matter of Neptune Estates, LLC v IVM Gen. Constr., Inc. (Sup Ct, Kings County, Bunyan, J, index No. 3575/10).

. IVM does not contest the plaintiffs calculations other than to state that “[t]he [plaintiffs] suggestion that its financial problems were the result of the [defendant’s] lien is totally contradicted by the record” referencing, dehors the record, a lien filed by Future City against the property and the purported commencement of a mortgage foreclosure action. Plaintiff has responded in its reply to IVM’s posttrial reply letter, which included claims of *663 false testimony by principals of plaintiff, with evidence that satisfies this court that any such lien was, as testified to by the principals of the plaintiff, fully satisfied on July 31, 2012. Any discrepancies in the public record with respect to “docketing” and “filing” of the release were merely the result of the changing of the lot numbers on the property upon the filing of the condominium declaration between the filing of the lien and the docketing of the release.

. Exhibits 47 and 48 include five checks issued by Neptune to Brooklyn Federal Escrow in the amount of $727.08 each for a total of $3,635.40.

. Exhibit 49 includes a mortgage interest ledger showing monthly mortgage interest payments in 2010 and Neptune’s form 1098 for tax year 2010 which indicates total mortgage interest payments for 2010 as $399,266.78.

. There was testimony at trial indicating that the cash withdrawals varied as some of the funds were purportedly used for separate loan interest payments to Barmapov with respect to the securing of a lien filed by former defendant Stillwell or for other personal uses. However, plaintiff claimed that either $4,166 or $4,167 of each withdrawal was payment to Barmapov for the interest on the purported $500,000 loan used to secure the Lien.